IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CAROL LEE MONTGOMERY | ) | |
| | ) | |
| v. | ) | No. 3:12-1171 |
| | ) | |
| CAROLYN W. COLVIN | ) | |
|     Acting Commissioner of | ) | |
|     Social Security | ) | |

# M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying Plaintiff's claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 13),[1] to which Defendant has responded (Docket Entry No. 14). Plaintiff also filed a subsequent reply to Defendant's response (Docket Entry No. 17). This action is before the undersigned for all further proceedings pursuant to the consent of the parties and the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry No. 22).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

---

[1] Plaintiff filed an earlier motion for judgment on the administrative record (Docket Entry No. 12), but subsequently filed an amended motion for judgment on the administrative record to correct an error with respect to the certificate of service. As such, Plaintiff's first motion for judgment on the administrative record (Docket Entry No. 12) was rendered moot. (Docket Entry No. 16).

# I. INTRODUCTION

Plaintiff filed an application for a period of disability and DIB on August 15, 2008. (*See* Transcript of the Administrative Record (Docket Entry No. 10) at 50-51).[2] She alleged a disability onset date of September 2, 2006, later amended to August 15, 2008. (AR 32, 50-51).[3] Plaintiff asserted that she was unable to work because of fibromyalgia, depression, rotator cuff tears in the shoulders, and pain in the leg, back, arm, and hands. (AR 56).

Plaintiff's application was denied initially and upon reconsideration. (AR 50-51, 56, 60). Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Ronald Miller on March 17, 2011. (AR 26). On March 28, 2011, the ALJ denied the claim. (AR 7-9). On September 21, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (AR 1-6). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

# II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on March 28, 2011. (AR 7-9). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2010.

2. The record indicates the claimant did engage in substantial gainful activity during the period from her alleged onset date of September 2, 2006, through her date last insured of June 30, 2010 (20 CFR 404.1571 *et seq.*).

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s). All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.
[3] Counsel for Plaintiff advised the ALJ that he had spoken with Plaintiff regarding this amended date, but no such amendment of the alleged onset of disability appears to have taken place. (AR 12).

3.  Through the date last insured, the claimant had the following severe impairments: bilateral shoulder impingement syndrome[;] status post right shoulder arthroscopy; fibromyalgia; and affective mood disorder (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

***

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform lifting and/or carrying of 20 pounds occasionally and 10 pounds frequently; standing and/or walking of 4 to 6 hours in an 8 hour workday; sitting of 8 hours in an 8 hour workday; occasional climbing of ropes, ladders and scaffolds; frequent climbing of stairs and ramps; frequent stooping, crouching, kneeling, crawling, balancing and reaching (overhead); no limitation in understanding and remembering simple and detailed instructions; occasional difficulty completing normal workday/work week at a consistent pace without interruption from psychologically based symptoms; occasional difficulty interacting with the public, coworkers and supervisors; she would do better working with things rather than people; and she can adapt to infrequent change.

***

6.  Through the date last insured, the claimant was able to perform past relevant work as an office manager and as a bookkeeper (20 CFR 404.1565).

***

7.  The claimant was 40 years old (a younger individual age 18-49) on the date last insured (20 CFR 404.1563).

8.  The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Through the date[] last insured, considering the claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

***

10. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 2, 2006, the alleged onset date, through June 30, 2010, the date last insured (20 CFR 404.1520(g)).

AR 12-21.


# III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.


# IV. DISCUSSION AND CONCLUSIONS OF LAW

## A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's

age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work.

*Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that

the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at steps four and five of the five-step process.[4] The ALJ found that, at step one, Plaintiff had engaged in substantial gainful activity during the period from alleged onset date through her date last insured. (AR 12). The ALJ found that Plaintiff met step two but found at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 12-13). At step four, the ALJ found that Plaintiff could perform past relevant work. (AR 20). At step five, the ALJ found that Plaintiff's residual functional capacity ("RFC") allowed her to perform lifting and/or carrying of 20 pounds occasionally and 10 pounds frequently; standing and/or walking of 4 to 6 hours in an 8 hour workday; sitting of 8 hours in an 8 hour workday; occasional climbing of ropes, ladders and scaffolds; frequent climbing of stairs and ramps; frequent stooping, crouching, kneeling, crawling, balancing and reaching (overhead);

---

[4] Although the ALJ found that Plaintiff had engaged in substantial gainful activity since her alleged onset date of September 2, 2006 (AR 12), he proceeded with the five-step evaluation to make additional and alternative findings to support his finding that Plaintiff is not disabled.

no limitation in understanding and remembering simple and detailed instructions; occasional difficulty completing normal workday/work week at a consistent pace without interruption from psychologically based symptoms; occasional difficulty interacting with the public, coworkers and supervisors; she would do better working with things rather than people; and she can adapt to infrequent change. (AR 13). Further, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 20-21).

**D. Plaintiff's Assertions of Error**

Plaintiff argues that the ALJ erred by (1) failing to properly consider all of her impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments; (2) not giving proper weight to the opinion of Plaintiff's treating physician; (3) concluding that Plaintiff had no more than moderate mental limitations based solely on her global assessment of functioning ("GAF") score; (4) failing to include a function-by-function assessment in the RFC assessment as required by SSR 96-8p; and (5) not properly evaluating Plaintiff's credibility. (DE 13-1 at 1-2). Plaintiff therefore requests that this case be reversed and benefits awarded, or, alternatively, that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration by a new ALJ. (*Id.* at 17).

Sentence four of 42 U.S.C. § 405(g) states the following:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision

is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The Court will address each of Plaintiff's assertions of error below.

**1. The ALJ's consideration of Plaintiff's impairments.**

Plaintiff argues that the ALJ failed to properly consider all of her impairments, which include major depressive disorder, bipolar disorder, chronic shoulder pain, fibromyalgia, anxiety disorder, chronic back pain, bilateral shoulder impingement syndrome, radiculitis, and cervicalgia. (DE 13-1 at 7). Plaintiff claims that her alleged impairments were "diagnosed and well-documented" in the record, and that the ALJ failed to provide sufficient reasons for finding that such impairments were not severe. (*Id*. at 7-8).

Plaintiff's argument fails for multiple reasons. For one, the ALJ determined that two of the impairments listed by Plaintiff, bilateral shoulder impingement syndrome and fibromyalgia, represented severe impairments. (AR 12). Also, contrary to Plaintiff's argument, the ALJ explicitly based his determination that the remainder of Plaintiff's listed impairments were not severe on the lack of objective medical evidence to support such a finding. With respect to Plaintiff's alleged mental disorders, the ALJ stated the following:

> The medical evidence indicates that since the [alleged onset date], the claimant has had no treatment by a mental health facility, no psychological counseling, no psychiatric treatment, no mental-impairment related emergency room visits and no psychiatric hospitalizations. Evidently, no treating physician referred her for mental health treatment. Moreover, her activities of daily living do not indicate she has any ongoing marked mental limitations … With no history of mental health treatment or mental diagnosis by a treating psychologist or psychiatrist, it

is reasonable to conclude that she has a medically non-determinable mental impairment or at most, a non-severe mental impairment.

(AR 17). Plaintiff does not address her lack of treatment, but instead cites, without any discussion, a single page in the administrative record in which an attending physician at the Summit Medical Center psychiatric ward noted his "initial impression" that Plaintiff had major depressive disorder, and possibly bipolar disorder. (AR 193). There is no indication that Plaintiff sought any additional mental health treatment following this visit, which took place over eighteen months prior to the alleged onset of disability. There is also no discussion of any limitations caused by these alleged mental disorders, which is the basis for a determination of disability. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").

Regarding alleged physical impairments, Plaintiff cites three pages in the record indicating that Plaintiff suffered from shoulder pain (AR 203, 221, 242), and one page documenting treatment with Dr. Carol Cantrell suggesting that Plaintiff suffered from back pain, fibromyalgia, and depression. (AR 289). As previously discussed, the ALJ found that Plaintiff's bilateral shoulder condition and fibromyalgia represented severe impairments, thus making Plaintiff's argument with respect to these conditions illogical. As to alleged back pain, and depression, Plaintiff again fails to reference any diagnostic or clinical findings in support of these diagnoses, or provide any discussion of limitations caused by these alleged impairments.[5] The ALJ discussed this lack of support, noting that Dr. Cantrell appeared to base her opinion solely on "observation and subjective complaints" by Plaintiff. (AR 17). The Court also notes that

---

[5] Indeed, as noted by the ALJ, Dr. Cantrell failed to support the opinion in her medical source statement with objective medical evidence. (AR 19-20).

Dr. Cantrell was a family practitioner at the time she examined Plaintiff, not a mental health specialist, which prompted the ALJ to discount her opinion as to depression. (AR 17).

The Sixth Circuit has noted that "the mere diagnosis of an impairment says nothing about its severity." *Brown v. Soc. Sec. Admin.*, No. 3:14-1451, 2015 WL 5098715, at \*6 (M.D. Tenn. Aug. 31, 2015) (citing *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)) *report and recommendation adopted*, No. 3:14-1451, 2015 WL 5559917 (M.D. Tenn. Sept. 18, 2015). Moreover, 20 C.F.R. § 404.1508 states that a "physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." *See also* 20 C.F.R. § 404.1527(a) ("Your impairment must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."). Here, Plaintiff does little more than point to a diagnosis of several alleged impairments without providing any support for her argument that the ALJ should have found them to be severe. Moreover, two of the impairments Plaintiff alleges were overlooked by the ALJ, bilateral shoulder impingement syndrome and fibromyalgia, were actually found to represent severe impairments. (AR 12). The Court therefore finds no error in the ALJ's consideration of Plaintiff's alleged impairments.

## 2. The opinion of the treating physician.

Plaintiff next argues that the ALJ violated SSR 96-2p and relevant case law by failing to accord controlling weight to the opinion of Dr. Cantrell, her treating physician. Plaintiff recites SSR 96-2p, which states in part that a treating physician's opinion "must be given controlling weight" if the opinion is "well-supported and not inconsistent with the other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at \*1. Plaintiff's lone argument appears to be

that Dr. Cantrell's opinion should have been given controlling weight based on her treatment of Plaintiff since 2000. (DE 13-1 at 10).

Dr. Cantrell provided two medical source opinions regarding Plaintiff's limitations, one for physical restrictions and one for mental restrictions. (AR 297-306). Regarding Plaintiff's alleged mental impairments, Dr. Cantrell found "marked" limitations in Plaintiff's ability to understand and remember complex instructions, carry out complex instructions, and her ability to make judgments on complex work-related decisions. (AR 304). When prompted to provide support for these opinions, Dr. Cantrell stated: "Patient with long history of anxiety affecting ability to function under stress. Any extra stressors … is [sic] completely overwhelming." (AR 304). Similarly, when prompted to provide support for her opinions that Plaintiff had "moderate" limitations in her ability to interact appropriately with the public and co-workers, and her ability to respond appropriately to usual work situations and to changes in a routine work setting, Dr. Cantrell simply stated: "The patient is easily stressed affecting ability to focus; and interact with others whether co-workers or supervisors." (AR 305).

In discounting Dr. Cantrell's opinion with respect to alleged mental impairments, the ALJ provided a detailed discussion regarding the lack of a diagnosis from a mental health specialist, Plaintiff's failure to seek mental health treatment, and incompatibility between Dr. Cantrell's assigned restrictions and Plaintiff's testimony regarding her activities of daily living. (AR 17). Notably, Plaintiff cites no evidence that refutes the ALJ's finding or supports Dr. Cantrell's opinions. Plaintiff states only that Dr. Cantrell "treated the Plaintiff for her mental impairments since 2000," and thus her opinion should be given great weight. (DE 13-1). This argument is unpersuasive, however, in light of the very regulations cited in Plaintiff's brief. Indeed, SSR 96-2p notes that controlling weight can only be given to a treating physician's opinion if it is well-

supported by "medically acceptable clinical and laboratory diagnostic techniques," meaning that the opinion of the treating source must be supported by "medical standards that are generally accepted within the medical community as the appropriate techniques to establish the existence and severity of an impairment." SSR 96-2p, 1996 WL 374188, at *3. Here, the ALJ noted that Plaintiff received no diagnosis from a treating psychologist or psychiatrist, and no treatment from a mental health professional. (AR 17).

The ALJ also noted that Dr. Cantrell is a family practitioner, not a mental health specialist. (AR 17). While this alone would not be a sufficient reason to dismiss Dr. Cantrell's opinion regarding Plaintiff's mental limitations,[6] the ALJ is directed to give more weight to "the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). *See also Correll v. Astrue*, No. 3:08-cv-280, 2009 WL 2601917, at *10 (E.D. Tenn. Aug. 24, 2009) (holding that the extent to which a non-mental health specialist could be considered a treating source for purposes of diagnosing a mental health impairment was "questionable"); *Mills v. Astrue,* 226 F. App'x. 926, 931 (11th Cir. 2007) (holding that a physician who treated a claimant's back problems but did not specialize in mental health was a non-treating, non-specialist doctor for purposes of determining the proper weight to be afforded to his opinion). This is also significant in light of Plaintiff's failure to seek any treatment from a mental health provider since the alleged onset of disability, as the ALJ is required to review the "testing the [treating] source has performed or ordered from specialists[.]" 20 C.F.R. § 404.1527(c)(2)(ii). *See also Atterberry v. Sec'y of Health*

---

[6] *See Moore v. Astrue*, No. 07-115, 2008 WL 4400685, at *5 (E.D. Ky. Sept. 23, 2008) ("The regulations merely provide that a specialist is entitled to greater weight, not that a family practitioner is unqualified to offer an opinion regarding mental health issues.").

*and Human Servs.,* 871 F.2d 567, 571 (6th Cir. 1989) (holding that the absence of psychiatric treatment suggests a mental impairment that is not severe or is not disabling). The ALJ not only discussed Plaintiff's lack of mental health treatment, but also referenced Dr. Cantrell's apparent reliance solely on Plaintiff's subjective complaints in diagnosing her alleged mental condition. (AR 19-20). As such, the Court finds no error in the ALJ's decision to discount Dr. Cantrell's opinion as to Plaintiff's mental impairments.

Regarding alleged physical impairments, Plaintiff argues that Dr. Cantrell's opinions "are supported by her records." (DE 13-1 at 11). Unfortunately, Plaintiff fails to discuss any of Dr. Cantrell's actual records. Nevertheless, the Court will examine the extent to which Dr. Cantrell's opinion is supported based on a review of the record.

Dr. Cantrell's medical source statement regarding physical limitations appear to refer to restrictions caused exclusively by fibromyalgia. When prompted to provide medical or clinical findings supporting the assigned restrictions pertaining to lifting and carrying, Dr. Cantrell provided a general description of fibromyalgia:

> [F]ibromyalgia causes muscular pain in defined areas or generalized. This chronic pain causes inability to carry, lift, walk, stand or sit for prolonged periods. It requires frequent changes in position to try to alleviate pain. Fatigue is another symptom which limits activities and requires frequent rest periods.

(AR 297). In each subsequent section of the medical source statement in which the physician is asked to identify medical or clinical findings that support the assigned restrictions, Dr. Cantrell again describes symptoms of fibromyalgia relating to muscle pain. (AR 299-301). In fact, Dr. Cantrell does not reference any records or previous treatment in support of her ascribed limitations.

20 C.F.R. § 404.1527(c) lists the factors that are considered when determining the weight given to medical opinions. One such factor involves the nature of the claimant's treatment with the physician, as the ALJ is directed to "look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. § 404.1527(c)(2)(ii). With respect to fibromyalgia, the Sixth Circuit has noted that this "elusive and mysterious disease" is difficult to diagnose. *Rogers*, 486 F.3d at 243-44 (internal citation and quotations omitted). Indeed, fibromyalgia patients do not present objectively alarming signs. *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam). As such, the process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and, (2) the ruling out of other possible conditions through objective medical and clinical trials. *Rogers*, 486 F.3d at 244 (citing *Preston*, 854 F.2d at 820; *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003)).

In the instant matter, the Court sees little evidence of that Plaintiff underwent any testing from Dr. Cantrell in response to her complaints of pain. Although Dr. Cantrell consistently listed fibromyalgia as a diagnosis over the course of approximately two years (AR 244; 285; 289-96), there is no indication that Plaintiff underwent any examination to support this diagnosis. In March of 2009, Dr. Cantrell recommended an increase in exercise for Plaintiff and diagnosed her with lumbar disc disease, which, as noted by the ALJ, was not confirmed by any radiographic imaging. (AR 14, 285). From August of 2009 through September of 2010, Dr. Cantrell listed fibromyalgia as one of Plaintiff's diagnoses and briefly discussed management of her pain with medication. (AR 289-95). This apparently included a drug screen, which Dr. Cantrell requested in order to ensure Plaintiff's compliance with the prescribed medication regimen. (AR 295).

However, there is no discussion of any physical examinations performed by Dr. Cantrell, nor any reference to prior testing by other physicians that led her to a diagnosis of fibromyalgia. This is significant because, as noted earlier, Dr. Cantrell did not cite any support for the opinion contained in her medical source statement, even when prompted to provide "the particular medical or clinical findings (i.e. physical exam findings, x-ray findings, laboratory test results, history, and symptoms including pain, etc.) which support your assessment[.]" (AR 297, 299-301).

Interestingly, Dr. Cantrell appeared to indicate during her last documented visit with Plaintiff on November 15, 2010 that an electromyography ("EMG") and nerve conduction velocity study ("NCV") would be performed on Plaintiff. (AR 296). A notation from the following day indicates that an appointment was made with Dr. Rutland for an NCV on November 18, 2010.[7] However, there is no evidence of any subsequent results from an EMG or NCV in the record, nor did Dr. Cantrell reference any such testing in her medical source opinion. There is similarly no indication of the testing of a series of focal points for tenderness or the ruling out of other possible conditions through objective medical and clinical trials. *Rogers*, 486 F.3d at 244 (internal citations omitted). There is instead a single reference to a negative Tinel's sign[8] on November 15, 2010. Even if this Tinel's sign had been positive, however, this examination did not take place until approximately five months after the date last insured. (AR 12).

---

[7] The notation also states that Plaintiff was advised to avoid using lotion or oils before the appointment, thus further suggesting that the NCV was to be performed on November 18, 2010. (AR 296).

[8] A positive Tinel's sign is found when a person experiences tingling, numbness, "pins and needles," or a mild "electrical shock" sensation in the hand when tapped on the wrist. *Engel v. Comm'r of Soc. Sec.*, No. 1:13-cv-318, 2014 WL 1818187, at *4 (S.D. Ohio May 7, 2014), *report and recommendation adopted,* No. 1:13-cv-318, 2014 WL 2452995 (S.D. Ohio June 2, 2014).

Plaintiff claims that there is substantial evidence to support Dr. Cantrell's opinions, but fails to reference any such evidence. The Court similarly finds little support for the severe limitations assigned by Dr. Cantrell in her medical source opinions. As discussed by the ALJ, Dr. Cantrell's own treatment notes do not support the restrictions recommended in the medical source opinion. (AR 19). In conjunction with Dr. Cantrell's failure to explain the basis for her recommendations in the medical source opinions, there is simply a lack of evidence to support Dr. Cantrell's conclusions. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). Based on this dearth of support, the Court finds no error in the ALJ's decision to give "less weight" to Dr. Cantrell's opinion regarding Plaintiff's physical condition. (AR 20).

**3. The Plaintiff's GAF scores.**

Plaintiff claims that the ALJ erred by finding that she had no more than moderate limitations with respect to her social and occupational functioning based solely on her GAF score. Plaintiff cites valid case law indicating that GAF scores are not endorsed by the Commissioner as a means of determining disability. *See Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007) (noting that the Commissioner "has declined to endorse the [GAF] score for 'use in the Social Security and SSI disability programs,' and has indicated that [GAF] scores have no 'direct correlation to the severity requirements of the mental disorders listings) (internal citations omitted).

Plaintiff's attempt to mischaracterize the basis of the ALJ's finding of moderate impairment with respect to her mental condition is not well taken. The ALJ plainly did not base

this finding solely on Plaintiff's GAF score, but instead included a description of her GAF score to demonstrate the consistency of the ALJ's finding with the overall record:

> Diagnoses included major depressive disorder (MDD), recurrent, moderate; and panic disorder without agoraphobia. [GAF] was 55 … a score generally consistent with moderate impairment. Examiner [Dr. Robert] Doran reported moderate limitations in sustaining concentration/persistence, social functioning and adaptation to change. Significantly, examiner Doran's assessment, diagnoses and GAF are consistent, indicate no more than moderate limitation in any area and are consistent with his examination findings.

(AR 15). It is unclear whether Plaintiff simply overlooked this analysis or if she intentionally asks the Court to disregard this discussion and treat the ALJ's reference to Plaintiff's GAF score as the sole basis for his findings. Regardless, the ALJ provided substantial evidence to support his conclusion, which includes findings from a licensed psychological examiner. Indeed, Dr. Moran's report specifically states that Plaintiff is "moderately limited" with respect to sustained concentration and remembering, interaction with others, and adapting to changes and requirements. (AR 251). As such, Plaintiff's argument is without merit.

**4. The RFC.**

Plaintiff next argues that the ALJ committed reversible error by failing to include a function-by-function assessment in the assigned RFC. Plaintiff does not identify any functions that were allegedly unacknowledged by the ALJ, but instead recites multiple portions of SSR 96-8p. (DE 13-1 at 13-14).

While Plaintiff is correct that SSR 96-8p requires the ALJ to assess both the exertional and nonexertional capabilities of the claimant,[9] it does not require the ALJ to provide a written

---

[9] Exertional capacities include lifting, carrying, standing, walking, sitting, pushing, and pulling. Nonexertional capacities include manipulative, postural, visual, communicative, and mental functions. SSR 96-8p, 1996 WL 374184, at *5-6.

function-by-function assessment in the opinion. *See Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r of Soc. Sec.,* 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)) ("Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing."). The Sixth Circuit has explained this position by noting that there is a difference "between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Id.* at 547-48. The ALJ is required only to explain how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform work-related activities, and explain the resolution to any inconsistences in the record. *Id.* at 548.

In the instant matter, the ALJ discussed and evaluated the objective medical evidence and Plaintiff's testimony, and ultimately determined that Plaintiff had several limitations pertaining to both her physical and mental capacities. (AR 13). The ALJ provided a detailed discussion of Plaintiff's credibility, her medical treatment with Dr. Cantrell, and the findings of the consultative examiners. (AR 14-20). The ALJ also specifically stated that the ascribed RFC was a combination of the medical opinions prepared by Dr. Bruce Davis and the state agency medical consultative examiner (AR 19), which was well within his purview. *See Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ-not a physician-ultimately determines a claimant's RFC.") (citing 42 U.S.C. § 432(d)(5)(B)).

The ALJ is not required to discuss those capacities for which no limitation is alleged. *Delgado*, 30 F. App'x at 547. Here, Plaintiff cites no medical records and fails to reference any symptoms that were allegedly overlooked by the ALJ. The Court therefore finds no merit in this assertion of error.

**5. Plaintiff's credibility.**

Plaintiff finally argues that the ALJ failed to properly evaluate her credibility in accordance with SSR 96-7p.[10] Plaintiff also argues that the ALJ improperly referenced substantial gainful activity that she performed after the alleged onset of her disability to discount her credibility. Plaintiff additionally claims that the ALJ improperly placed "excessive emphasis" on her activities of daily living, which she asserts were minimal. (DE 13-1 at 16).

The Court finds no violation of SSR 96-7p in this matter. Plaintiff argues that the ALJ is not permitted to make a "single, conclusory statement that 'the individual's allegations have been considered,'" SSR 96-7p, 1996 WL 374186, at *2, then proceeds to address specific excerpts of opinion in which the ALJ clearly made more than a single, conclusory statement in discounting Plaintiff's credibility. (DE 13-1 at 15-16). For example, after discussing the Plaintiff's daily activities in substantial detail (AR 15-16), the ALJ questioned the severity of Plaintiff's alleged mental condition because such activities "do not indicate she has any ongoing marked mental limitations." (AR 17). He also noted that despite complaints of chronic pain, Plaintiff "has engaged in a good range of daily activities" (AR 18), an analysis that is required by the Commissioner in determining a claimant's credibility. *See* 20 C.F.R. 404.1529(c)(3) ("Factors relevant to your symptoms, such as pain, which we will consider include: (i) Your daily activities ...."). The ALJ further cited discrepancies between Plaintiff's allegations and objective medical evidence, Plaintiff's failure to comply with a free referral to physical therapy despite

_____

[10] SSR 96-7p has been superseded by SSR 16-3p, which became effective on March 28, 2016. Because Plaintiff's complaint was filed in November of 2012, however, SSR 96-7p applies to the Court's analysis of this claim.

claiming that she could not afford it, and noncompliance with treatment recommendations as a basis for his credibility finding. (AR 18-19).

Nevertheless, Plaintiff also faults the ALJ for citing work that she was able to perform since her alleged onset of disability, but misses the point of the ALJ's analysis. During the hearing, Plaintiff admitted that she had performed substantial gainful activity for approximately three months in 2008, which was almost two years after her alleged onset of disability. (AR 31). In light of this admission, Plaintiff advised that she planned to amend her alleged onset of disability date to August 15, 2008. (AR 32).[11] Plaintiff claims that the ALJ "improperly used this to decrease the claimant's credibility." (DE 13-1 at 15). However, the ALJ ultimately determined that Plaintiff's work in 2008 was not substantial gainful activity. (AR 12). The ALJ instead explicitly discounted Plaintiff's credibility based on records indicating that Plaintiff had performed substantial gainful activity in *2007*, (AR 12), a fact that was not revealed during the hearing: "she alleged she has been unable to perform any type of gainful employment since September 2, 2006, but the record indicates she earned $18,449 in 2007." (AR 18). Even if the alleged onset date had been amended, Plaintiff failed to reveal this work performed in 2007 despite being questioned by the ALJ regarding her ability to work after September 2, 2006. (AR 31).

The ALJ provided other reasons for finding Plaintiff to be less than credible, including noncompliance with treatment recommendations and inconsistencies in her reported smoking habit. (AR 17). He discussed the lack of diagnostic findings to support the existence of a disabling condition, and noted that Plaintiff had continually been treated conservatively for her alleged symptoms. (AR 18). He further noted indications in the record that over-the-counter pain

---

[11] See n.3, *supra*.

relievers and prescribed medication had successfully relieved Plaintiff's pain and discomfort. (AR 18). The ALJ also discussed Plaintiff's claim during her hearing that she could not afford to attend physical therapy as recommended by her treating physician, which contradicted records indicating that at least one physician referred her for physical therapy free of charge. (AR 14).

Moreover, as discussed previously, the ALJ noted that Plaintiff had failed to seek any treatment from a mental health facility, psychological counseling, or other psychiatric care. (AR 17). This was a reasonable basis for questioning Plaintiff's credibility in light of her testimony regarding extensive mental symptoms. *See Key,* 109 F.3d at 274 (holding that the failure to seek mental health treatment is significant when assessing the credibility of a plaintiff's allegations); *Atterberry,* 871 F.2d at 571 (the absence of psychiatric treatment suggests a mental impairment that is not severe or is not disabling).

The Sixth Circuit has previously stated that the credibility finding of an ALJ is virtually "unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citing *Payne v. Comm'r of Soc. Sec.,* 402 F. App'x. 109, 112-13 (6th Cir. 2010)). This level of deference is based on the ALJ's unique opportunity to observe the claimant and judge any subjective complaints. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Despite Plaintiff's argument otherwise, the ALJ provided extensive discussion of his reasons for discounting Plaintiff's credibility. (AR 14-19). Accordingly, the Court rejects this assertion of error and affirms the decision of the Commissioner.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record

(DE 13) is DENIED. An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge